UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/20/19

-------------------------------------------------------------x

IN RE: ZIMMER M/L TAPER HIP     :
PROSTHESIS OR M/L TAPER     :    MDL NO. 2859
HIP PROSTHESIS WITH KINECTIV   :
TECHNOLOGY AND        :    18-MD-2859 (PAC)
VERSYS FEMORAL HEAD PRODUCTS :    18-MC-2859 (PAC)
LIABILITY LITIGATION     :
                          :    **ORDER NO. 34**
*This Document Relates to All Cases*  :

-------------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

The Parties in this multi-district litigation ("MDL") submitted briefing regarding the

cases this Court should select for Bellwether Trial, and on a motion by Defendant Zimmer

("Zimmer," "Defendant") seeking certain *ex parte* contacts prior to any deposition with

physicians who treated the plaintiffs. Dkts. 181, 190–194. The Court heard oral argument at a

Status Conference on December 12. Minute Entry dated Dec. 12, 2019; Tr., Dkt. 197.

Zimmer's motion for an Order governing *ex parte* contacts with treating physicians of the

Bellwether Plaintiffs is GRANTED in part and DENIED in part. The motion is further

GRANTED as to contacts with prospective experts who are also testifying physicians, subject to

the protections set out in this Order.

## DISCUSSION

### I.    Bellwether Case Selection

The Court selects the following four cases to be prepared for Bellwether Trial:

- Category One: (1) *Little et al. v. Zimmer, Inc. et al.*, 18-cv-10393 ("*Little*");

                (2) *Nutting v. Zimmer, Inc. et al.*, 19-cv-699 ("*Nutting*").

- Category Two: (1) *Pride et al. v. Zimmer, Inc. et al.*, 18-cv-10649 ("*Pride*");

                (2) *Goode v. Zimmer, Inc. et al.*, 19-cv-03504 ("*Goode*").

The Parties will commence case-specific fact discovery for these Bellwether Trial cases as provided in the Second Amended Schedule. Dkt. 177, at 2; Tr., Dkt. 197, at 15:16–24:22.

## II.     Order Governing *Ex Parte* Contacts with Treating Physicians

The Defendant asks for permission for two different kinds of *ex parte* contacts: (1) permission to "conduct informal interviews with the bellwether Plaintiffs' physicians"; and (2) permission "to have informal communications with treating physicians who are design consultants and potential experts in all cases." Dkt. 181, at 1, 9. The Plaintiffs' Executive Committee ("PEC") opposes the motion. Dkt. 190; Tr., Dkt. 197, at 3:13–15:3.

### a.  Contacts with Treating Physicians of Bellwether Plaintiffs

"The majority of courts that have addressed the issue of *ex parte* communications with a plaintiff's treating physician assume or conclude that federal courts must apply state *ex parte* rules under Federal Rule of Evidence 501."[1] *In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, 890 F. Supp. 2d 896, 901 (N.D. Ill. 2012). This Court joins that majority.

Zimmer is permitted to conduct informal, *ex parte* interviews with the treating physicians in *Little*, *Nutting*, *Pride*, and *Goode* to the extent allowed by the underlying state privilege law of each case. These cases have come to the cusp of trial in this MDL Court by an elaborate route, but no amount of procedural complexity should change the protections the individual plaintiffs would enjoy if their cases were to be heard in the transferee courts. Physician-patient privilege, where it exists, is a creature of state statute and common law, which also dictates when any privilege is waived. *See Whalen v. Roe*, 429 U.S. 589, 602 n. 28 (1977) ("The physician-patient evidentiary privilege is unknown to the common law. In States where it exists by legislative

---

[1] Federal Rule of Evidence 501 provides: "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501.

enactment, it is subject to many exceptions and to waiver for many reasons."). The Bellwether cases maintain their individual character despite being subsumed into this MDL. If filing the case constitutes a waiver of the physician-patient under the applicable state law, then it is waived here; if not, then there is no waiver.

### b. Contacts with Prospective Experts

Zimmer also "requests . . . an order permitting informal communications with design consultants and potential experts who . . . also have treated plaintiffs in cases consolidated in this MDL." Dkt. 181, at 9. Defendant argues that "[t]hese physicians have material knowledge wholly unrelated to their treatment of any individual plaintiff." *Id.*

There are 168 cases pending in this MDL, with 13 additional active cases identified by the Parties in state courts. Dkt. 191, at 1. "As a general rule, in the absence of a specific prohibition, potential witnesses are fair game for informal discovery by either side of a pending action." *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 946 F. Supp. 2d 512, 514 (S.D. W. Va. 2013) (citing *Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975)).

Zimmer may hold *ex parte*, informal meetings with treating physicians who are prospective experts in other cases consolidated in this MDL. In holding those meetings, Zimmer must comply with the protections set forth below, which the Court adopts in amended form from *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, 2016 WL 915288, at *9 (E.D. La. Mar. 9, 2016). The Court also adopts the requirement for a written declaration proposed by Zimmer. Dkt. 181, Ex. A, at 3. Specifically, when contacting potential physician experts:

> (1) All *ex parte* contacts by Zimmer must be limited to non-substantive discussions until the prescribing or treating physician has affirmatively expressed a *bona fide* interest in being considered as a retained expert.

(2) Zimmer shall not communicate with a physician-expert who has installed a Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Technology and Versys Femoral Head Products about any of his or her patients that the physician has treated using these products.

(3) Zimmer shall not use a physician as a consulting or testifying expert in a case where that physician's present or former patient is a plaintiff in that case.

(4) Once a good-faith interest in serving as a physician-expert has been established, the physician may not accept Zimmer's offer until the physician has disclosed the scope of the proposed physician-expert arrangement to his or her current patients who have had or plan to have the Zimmer products at issue in this litigation installed.

(5) Counsel for Zimmer must secure and maintain a written declaration from each treating physician it contacts *ex parte* certifying: (a) that the physician is aware that there are plaintiffs in the MDL whom he or she has treated, or that one of their patients may become an MDL plaintiff during the course of the MDL; (b) that the physician has not communicated and will not communicate with Zimmer's counsel about any of those plaintiffs and their treatment, and for those witnesses serving as retained experts, will not serve as an expert in any of their own patients' cases; and (c) that the physician understands that he or she is under no obligation to speak to Zimmer's counsel about this litigation, and that any such communications are voluntary. Zimmer must provide each physician with a copy of this Order before signing a declaration.

*See In re Xarelto*, 2016 WL 915288, at *9; Dkt. 181, Ex. A, at 3.

## CONCLUSION

Defendant's motion for an Order governing *ex parte* contacts with treating physicians is GRANTED in part and DENIED in part as to the Bellwether Plaintiffs. The motion is GRANTED as to contacts with prospective experts who are also treating physicians, subject to the protections set out in this Order. The Clerk of Court is directed to close the motion at Docket 181.

Dated: New York, New York
     December *19*, 2019

SO ORDERED

PAUL A. CROTTY
United States District Judge