UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
IN RE: ZIMMER M/L TAPER HIP :
PROSTHESIS OR M/L TAPER : MDL NO. 2859
HIP PROSTHESIS WITH KINECTIV :
TECHNOLOGY AND : 18-MD-2859 (PAC)
VERSYS FEMORAL HEAD PRODUCTS : 18-MC-2859 (PAC)
LIABILITY LITIGATION :
: **ORDER NO. 36**

*This Document Relates to All Cases* :
------------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

This Order resolves Defendant Zimmer's motion for reconsideration of the Court's decision in Order No. 34 regarding safeguards placed on its contact with prospective experts who are also treating physicians of patients in this MDL. That motion is DENIED. Also considered in this Order is the Plaintiffs' motion to compel discovery of documents related to a deferred prosecution agreement that the Defendant entered into with the U.S. Department of Justice in 2007. That motion too is DENIED.

**DISCUSSION**

I.  **Motion for Reconsideration**

In Order No. 34, this Court permitted Zimmer to conduct informal *ex parte* meetings with prospective experts who are also treating physicians of patients whose cases are consolidated in this MDL, with certain protections. Among those is a requirement that, "[o]nce a good-faith interest in serving as a physician-expert has been established, the physician may not accept Zimmer's offer until the physician has disclosed the scope of the proposed physician-expert arrangement to his or her current patients who have had or plan to have the Zimmer products at

issue in this litigation installed."[1]  (Order No. 34, Dkt. 199, at 4).   It is this provision which Zimmer now moves the Court to reconsider.[2]  The Parties briefed their positions and presented arguments at a conference on February 19.  (Minute Entry dated Feb. 19, 2020; Tr., Feb. 19, 2020 Oral Argument, at 5:6–12:25).

> **A. Standard**

Local Rule 6.3 sets the grounds for reconsideration and has the finality of decisions as its guiding star.  *In re Molycorp, Inc. Secs. Litig.*, 13 Civ. 5697 (PAC), 2016 WL 3002424, at *2 (S.D.N.Y. 2016).  The rule is also intended "to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."  *Id.* (quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 (S.D.N.Y. 2011)).

"The party moving for reconsideration must 'point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"  *In the Matter of Energetic Tank*, 1:18-Cv-1359 (PAC) (RWL), 2020 WL 978257, at *1 (S.D.N.Y. Feb. 28, 2020) (quoting *Shrader v. CSK Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Shrader*, 70 F.3d at 257; *Davidson v. Scully*, 172 F. Supp. 2d 458, 462 (S.D.N.Y. 2001) (stating that a motion for reconsideration is not "a vehicle for relitigating issues already decided by the Court").

---

[1] Inclusion of the provision at issue was suggested by the Plaintiffs, and taken from a comparable order in *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, 2016 WL 915288, at *9 (E.D. La. Mar. 9, 2016).  (Dkt. 190, at 12–13).

[2] Zimmer invites the Court in the alternative to consider this motion as one on a previously unargued issue, on the basis that it was not adequately briefed by the Parties in the first instance.  (Dkt. 205, at 1 n. 1).  The provision was discussed in briefing by both parties, however, and was addressed at oral argument on December 12, 2019.  (Dkt. 190, at 12–13; Dkt. 194, at 9–10; Tr., Dkt. 197, at 10:10–15:1).  The motion is therefore properly styled as one for reconsideration.

### B. Application

Zimmer starts with the broad statement that, aside from the *Xarelto* case, this Court is the only one to impose "such a requirement . . . in the hundreds of thousands of state and federal court medical products liability cases filed individually and in MDLs throughout American litigation history." (Dkt. 205, at 1). But in at least one MDL of which this Court is aware the defendant was ordered to have no contact whatsoever with treating physicians prior to depositions. *See, e.g.*, *In re Mirena IUD Prods. Liab. Litig.*, 13-md-2434 (CS), Order No. 21, Dkt. No. 1090 (S.D.N.Y. June 16, 2014). Indeed, the Plaintiffs originally asked for an order barring the Defendant from any contact with treating physicians as prospective experts, a course that the Court decided not to take, instead adopting the compromise provisions in Order No. 34. (Dkt. 190, at 13).

Zimmer submits that the *Xarelto* court reconsidered its order imposing the disputed protection. What in fact appears to have occurred in that case is that the adverse parties reached a mutually agreeable solution that superseded the original order—a possibility the Court asked about and which seems to be off the table for the Parties. (Dkt. 229, at 1; Tr., Feb. 19, 2020, Oral Argument, at 9:2–10:13). As far as data that went unexamined by the Court, the Defendant includes in its motion papers the anecdotal remarks of two surgeons with whom it shared Order No. 34. (Dkt. 205, at 5). This is not data the Court overlooked in rendering its decision; the Defendant clearly could have obtained surgeon reactions to the disputed provision in its papers on the original motion, but did not do so. The rest of Zimmer's argument consists of a re-weighing of the costs and benefits of the imposed protection, including a discussion of how such a notice would work procedurally for the surgeons. (Dkt. 205, at 6–10). These are the same

arguments the Defendant raised in its first objections to inclusion of the protection. (Dk. 194, at 9–10).

This is an attempt to "relitigate an issue already decided," *Shrader*, 70 F.3d at 257, and without overlooked controlling decisions or data the Court will not chew the same cabbage twice. Zimmer's motion for reconsideration is denied.

## II. Motion to Compel Deferred Prosecution Agreement

The Plaintiffs ask the Court to compel the Defendant to produce documents related to a Deferred Prosecution Agreement ("DPA") that the U.S. Department of Justice ("DOJ") and Zimmer entered into in September of 2007. (Dkt. 233, at 1). The DPA involved allegations that the Defendant bribed orthopedic surgeons and otherwise improperly encouraged them to use its medical devices. (*Id.*). The Plaintiffs seek "all documents related" to the DPA, and for Zimmer to "identify and describe any financial payments, funding, grants, contributions or support, concerning the Products, provided by Defendants to any physician, scientist, medical or scientific expert, or any institution, agency or entity with which said individual is affiliated." (*Id.* at 2). The Defendant opposes the motion, arguing that the requested production is irrelevant, cumulative, overbroad and excessively burdensome. (Dkt. 238, at 1).

### A. Standard

Federal Rule of Civil Procedure 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," taking into account, among other considerations, "the importance of the discovery in resolving the issues" in the litigation. Fed. R. Civ. P. 26(b)(1). Proportionality, which "focuses on the marginal utility of the discovery sought," goes hand-in-hand with relevance, such that "the greater the relevance of the information in issue, the less likely its

discovery will be found to be disproportionate." *Vaigasi v. Solow Mgmt. Corp.*, 11 Civ. 5088 (RMB) (HBP), 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016).

### B. Application

The Plaintiffs have not shown that the material sought here is either "relevant to [its] claim[s]" or "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). They submit that the DPA communications would bolster a theory of widespread kickbacks and malfeasance that would be relevant to their failure to warn and punitive damages claims and Zimmer's learned intermediary defense. (Dkt. 233, at 3). But the DPA itself and other public documents attesting to the agreement and the $169.5 million settlement the Defendant reached with the DOJ are all available to the Plaintiffs.[3] Beyond that, Plaintiffs have not demonstrated that the information would help at all in "resolving the issues" in this case and Defendant has made a compelling argument that any "likely benefit" stands to be outweighed by the burden of the proposed discovery. Fed. R. Civ. P. 26(b)(1).

---

[3] Zimmer has produced 1099 forms for 251 surgeons showing their annual compensation and 177 consulting agreements, which the Plaintiffs could point to for any for any allegations regarding improper compensation. (Dkt. 238, at 2–3). The Defendant also argues convincingly that the disclosures to the DOJ were made nearly fifteen years ago, concerned many products other than those at issue here, and involved more than 600,000 documents. (*Id.* at 3). This Order in no way constitutes a ruling on the admissibility (or inadmissibility) of any of the discussed material as evidence at trial.

## **CONCLUSION**

The Defendant's motion for reconsideration of one of the requirements for contacts with prospective experts who are also treating physicians in this MDL is DENIED. The Defendant's motion to compel production of information related to the 2007 DPA is likewise DENIED. The Clerk of Court is directed to close the motions at Dockets 204 and 233.

Dated: New York, New York
      April  9 , 2020

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge